IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 23-88-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| PHILIP ANTHONY WALLACE, | |
| Defendant. | |

On September 16, 2024, Defendant Philip Anthony Wallace moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the United States Supreme Court's decisions, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). (Docs. 51, 52). Under *Bruen* and *Rahimi*, Wallace contends that "18 U.S.C. § 922(g)(1) is unconstitutional as applied to [him]" and accordingly, his "expired felony convictions do not justify life-long disbarment." (Doc. 52 at 14, 18).

The Government responded on September 25, 2024, arguing that the Court should deny Wallace's motion in accordance with the Ninth Circuit's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which affirmed § 922(g)(1)'s constitutionality under the Second Amendment. (Doc. 55).

1

Wallace did not reply.

For the following reasons, the Court denies Wallace's motion.

## I.   Factual Background

On July 20, 2023, Wallace was charged with possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 3). According to Wallace, on or about June 8, 2022, Montana state probation officers searched and seized firearms from Wallace's residence. (Doc. 52 at 2). Wallace was arrested and his conditional release was subsequently revoked. (*Id.*). In July 2023, Wallace was indicted by a federal grand jury of the instant offense. (Doc. 3).

According to Wallace, he has the following felonies: (1) "two apparent felony burglary convictions from 1980 in California;" (2) driving under the influence of alcohol or drugs from 2007 in Montana; (3) criminal endangerment from 2007 in Montana; (4) assault on a peace officer from 2007 in Montana; and (5) driving under the influence of alcohol or drugs from 2020 in Montana. (Doc. 52 at 2–3; Doc. 53).

## II.   Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452

(9th Cir. 1986).  The Court has determined Wallace's motion is appropriate for pre-trial resolution because it solely involves a question of law.

## III.   Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In 2022, the Supreme Court decided *Bruen* finding that the Second Amendment's plain text coupled with an historical analysis of our Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597 U.S. at 17, 28–29.  The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

Here, Wallace claims that under *Heller*, *Bruen*, and *Rahimi*, 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.  (Doc. 52).  Wallace argues that: (1) the Ninth Circuit's holding in *Vongxay* is not controlling in the wake of *Bruen* and *Rahimi*; (2) his person and conduct falls within the meaning of the Second Amendment's plain text; and (3) the historical framework set forth in *Bruen* and

*Rahimi* provide no support for permanent disbarment of a convicted felon. (*Id.* at 5, 13–14).

The Government disagrees. The Government asks this Court to adhere to the Ninth Circuit's decision in *Vongxay*, which upheld the constitutionality of § 922(g)(1) under the Second Amendment. (Doc. 55 at 2–3). Likewise, the Government asks this Court to adhere to its own decision in *United States v. Bulltail*, No. CR 22-86-BLG, 2023 WL 3947823 (D. Mont. June 12, 2023), which upheld the constitutionality of § 922(g)(1). (*Id.* at 2). In the alternative, the Government reasons that even if *Vongxay* does not control, the holding in *Bruen* "affirmed the presumptive constitutionality of regulations like § 922(g)(1)." (*Id.* at 4).

Before addressing the parties' arguments in the case, the Court must briefly address the Second Amendment's jurisprudence status in the Ninth Circuit as it relates to § 922(g)(1). In May 2024, a Ninth Circuit three judge panel found that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to the nonviolent felon defendant in that case. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At that time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. In July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). This Court recognizes that

4

"a decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted).

Provided the vacated status of *Duarte*, the Court will first address the authority of *Vongxay* as disputed by Wallace and relied on by the Government. The Court will then analyze Wallace's constitutional challenge under *Bruen*.

A.    Vongxay *Governs*

The *Vongxay* court, bound by its decision in *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), held that "§ 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon." 594 F.3d at 1118. The *Vongxay* holding was "buttressed by the fact that *Younger* upheld the very type of gun possession restriction that the Supreme Court deemed 'presumptively lawful.'" *Id.* at 1116 (quoting *Heller*, 128 S. Ct. at 2817 n. 26) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."). Though the legal inquiry ended with *Younger*, the court further examined caselaw and historical examples "lend[ing] credence to the post-*Heller* viability of *Younger*'s holding." *Id.* at 1116.

Here, Wallace argues that "*Vongxay* no longer stands firm." (Doc. 52 at 7). Specifically, Wallace takes issue with the prior caselaw, and historic gun restriction examples used by *Vongxay* to further support its holding. (*Id.*). First, Wallace argues that *Vongxay* endorsed the application of a Fifth Circuit means-end scrutiny

test that was recently rejected by the *Bruen* court. (*Id.* (citing *Vongxay*, 594 F.3d at 1116–117 (citing *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004)); citing *Bruen*, 597 U.S. at 20)). Second, that *Rahimi* undermined *Vongxay*'s emphasis placed on the link between "virtuous citizenry" and the right to bear arms. (*Id.* at 8 (citing *Vongxay*, 594 F.3d at 1118; *Rahimi*, 144 S. Ct. at 1903). Third, that *Vongxay* observed at the time that no court under *Heller* had found § 922(g) constitutionally suspect—which is no longer the case. (*Id.* at 9 (citing *Vongxay*, 594 F.3d at 1117)). Finally, that *Vongxay* erroneously lent credit to historical support for barring felons from the militia as a justification for Second Amendment restrictions placed on felons. (*Id.* (citing *Vongxay*, 594 F.3d at 1117)).

Despite Wallace's contentions, this Court is bound by *Vonxgay*'s holding, not it's credence. *Vongxay*'s holding is clear on the matter. "[Section] 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon." *Id.* at 1118; *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional.").

Thus, without *Duarte*, *Vongxay*'s precedent stands, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting

District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Those courts applying *Vongxay* have held that § 922(g)(1) "passes constitutional scrutiny." *United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023).

Therefore, Wallace's challenge fails under *Vongxay*.

B.   Bruen *Analysis*

Like other rights, Second Amendment rights are not unlimited. *Bruen*, 597 U.S. at 21. The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision earlier this year in *Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d __ 2024 WL 3449554, at *3 (D. Mont. 2024) (citing 144 S. Ct. at 1926–27 (Jackson, J., concurring)).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id*. The

historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

 *1. Plain Text*

 Considering the first step of the *Bruen* test, Wallace argues that his person and alleged conduct fall under the protection of the Second Amendment's plain text. (Doc. 52 at 13). The Government does not respond to the plain text analysis.

 Undoubtedly modern forms of firearms in the home are protected by the Second Amendment. *See Bruen*, 597 U.S. at 19, 28, 32–33. Here, material to the plain text analysis, Wallace argues that he is a protected person under the Second

Amendment as a citizen of the United States. (Doc. 52 at 13 (citing *Heller*, 554 U.S. at 580 ("[T]he people" as used in the Constitution "unambiguously refers to all members of the political community, not an unspecified subset.")))). However, no higher court has ruled on whether felons are included in the "people" protected by the Second Amendment. District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 672 n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[1]  *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL

---

[1] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that the first step is satisfied. *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

### 2.    *Historical Analogues*

Moving to the second step, Wallace argues that *Rahimi* "cautioned that a law does not comply with the Second Amendment if it regulates arms-bearing 'to an extent beyond what was done at the founding.'" (Doc. 52 at 14 (citing *Rahimi* 144 S. Ct. at 1898.)). Further, a prohibition on his Second Amendment right "goes well beyond the parameters set out in *Rahimi*." (*Id.*). The Government disagrees arguing that § 922(g)(1)'s prohibition on the possession of firearms by felons is "consistent with this Nation's historical tradition of firearm regulation." (Doc. 55 at 2).

In *Rahimi*, the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual from possessing a firearm if they are subject

10

to a domestic violence restraining order that includes a finding that the individual "represents a credible threat to the physical safety of [an] intimate partner." 144 S. Ct. at 1891. The Court stated that the proper analysis is determining if the challenged regulation is consistent with the principles that underpin our regulatory tradition. *Id.* at 1898. The Court expounded on the analysis, writing, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* The Court found that the Nation's tradition of firearm regulation allowed the Government to disarm individuals who present a credible threat to the safety of others, and therefore, § 922(g)(8) is constitutional. *Id.* at 1902.

Wallace relies on *Rahimi* arguing that permanent disbarment requires a judicial determination that a particular defendant presents a physical danger to another individual. (Doc. 52 at 14, 15, 18). This argument holds little weight as the decision in *Rahimi* applied specifically to § 922(g)(8). *Rahimi*, 144 S. Ct. at 1898. Wallace is being prosecuted under § 922(g)(1), which prohibits possession of a firearm by any person convicted of a felony. (Doc. 2). Therefore, under *Rahimi*'s logic, the proper inquiry for this Court is whether the Nation's tradition of firearm regulation allows the Government to disarm individuals who have been convicted of

a felony, not whether Wallace has been found to pose a credible threat to another individual.

The Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4– *5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute). Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." 554 U.S. at 626. Two years later, in *McDonald v. City of Chicago*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many . . . prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is

to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

Accordingly, the weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Wallace under the *Bruen* and *Rahimi* framework.

## IV.   Conclusion

IT IS SO ORDERED that Defendant Philip Anthony Wallace's Motion to Dismiss (Doc. 51) is DENIED.

DATED this 22nd day of October, 2024

SUSAN P. WATTERS
United States District Judge

14